We'll hear argument next this morning in Case 13-9026, Whitfield v. United States. Mr. Carpenter. Mr. Chief Justice, and may it please the Court, the basic bank robbery offense under Section 2113a requires the robber to use force, intimidation, or violence against another person. Section E's forced accompaniment provision is designed for much more extreme conduct that Congress viewed as roughly on par with murder. And yet the government would have that provision and its 10-year mandatory minimum apply any time that a robber forces someone to take a single step with him in the course of a robbery. That single-step rule isn't justified by the text of the statute, and it isn't necessary to ensure just punishment for bank robbers. In this case Why isn't it justified by the text? Your Honor, it's not justified by the text. I can accompany my wife to her table when we go to a dinner party and we're seated at different tables? Isn't it proper to say I accompany her to the table? Your Honor, our view is not that it is technically improper, but that it is – it would not be an ordinary and natural usage of the word accompany, for example, to say to people. It is. I just gave you an ordinary and natural use. I accompanied my wife to her table. Our view is that it is not an ordinary usage to say were you accompanying, for example, from this side of the lectern to this side, which is the amount of movement the government believes is covered. Or, for example, to say were you accompanying me, Justice Scalia, from your chair to yours. Scalia, you think there's a spatial component to – I mean, I don't understand why you'd say it's not normal usage unless you say there is a spatial requirement that you – to accompany somebody you have to walk a longer distance. And the example I just gave you suggests otherwise. Your Honor, our view in the ordinary usage, it is used in the sense of going to a destination, to the theater, to the ballpark. But even if there is some question of whether the usage of just a movement of a few feet is an ordinary usage, where there are multiple possible meanings of a term, we look to the statutory context and the structure. Scalia, I'm asking you whether there are multiple possible – listen, I'm very big on the role of lenity. But the condition for it is that there be ambiguity. And accompany means accompany. I don't see any spatial component to it. And the rule here is, you know, garbage in, garbage out. It may be a very foolish statute. But we apply what Congress thought was not foolish. Well, Justice Scalia, first, whether there's ambiguity is determined not by looking at the word accompany in isolation. But as the Court said last year in the Utility Air context, or in the Utility Air case, the words of the statute are interpreted in their context and with a view toward their place in the statutory scheme. Here, the place that the word accompany serves in this statutory scheme is to set off a set of extreme conduct that Congress viewed as roughly on par with murder. Its association in Section E with the killing offense tells us, under the Noscator principle, that Congress viewed a forced accompaniment as akin to murder. Twenty steps. Twenty steps is horrible enough for Congress to have believed it's enough of an accompaniment? What? Half a mile? What? Well, Your Honor, we don't believe there's going to be a bright-line rule based on the number of steps. I don't insist on a bright-line rule. I insist on some rule. What is your rule? Does it have to be outside the building? Does the bank robber have to take the person as a hostage? Outside the building? We think the best way to effectuate the structure of the scheme is to have a finding of substantiality. And we would instruct a jury or a fact finder under a Rule 29 motion, first and foremost, to say that a substantial movement is something more than a de minimis or a trivial movement. If the district court or this Court wants to go further than that, we believe that the court or the jury That's a very different rule than in your brief. I could buy a de minimis rule, but I don't know where you get the word substantial. Your Honor, we believe that substantial is implied in the structure, again, looking at first, not the principle. Let's say we disagree. Where would you find de minimis? If you disagree with that, then I think you would look you could just apply a de minimis principle and say that movement of just a few feet within a person's own home is How much is a few feet? Well, in this case, it's about 4 to 9 feet, which is approximately from where you're sitting, Justice Sotomayor, to where you're sitting, Justice Scalia. That is approximately the amount I thought the record was different. I thought the record was 14 to 20. It's not. The government in its brief asserts that it is 20 feet from the front door of the house. Sorry. Eight. No. I was right. Go ahead. If you look at the government asserts that it was 20 feet from the front door all the way back to the room, but first the record also suggests that she was met Mr. Whitfield when she was coming out of the hallway. So the movement wasn't the 20 feet from the front door. It was from the threshold of the hallway into the computer room. Is it contextual? In other words, is 20 feet in her home different from 20 feet in the bank? Yes. Well, I think 20 feet all within a single building is almost never going to qualify, because that cannot be so significantly different from the conduct that is covered by an ordinary A offense that Congress would have viewed it as extreme enough to justify a 10-year mandatory minimum penalty. The reason I ask is that it strikes me that it makes a difference if it's part of the robbery itself. I mean, it seems to me to tell the teller to go to the vault or something. That's what happens in a bank robbery. If, on the other hand, the defendant takes the teller from the bank to the car and then, you know, they block the car, that strikes me as something different, even though the distance might be the same. Well, you're right, and we agree with you that it is a contextual inquiry. So taking the person out of the bank and into the car is very likely going to qualify. Except that the statute says both in the course of or in fleeing from. So it obviously envisions an accompaniment in the course of the bank robbery, doesn't it? I believe that's the case. The answer is yes, right? Well, that language, in our view, would be satisfied by the hypothetical or by the not a hypothetical, by an actual case that we see in Wilson, which, for example, which is cited in the government's brief where the bank robber goes to a bank employee's home, forces them to come with him from their home to the bank to facilitate the robbery. That's absolutely an accompaniment in the commission of the offense. I don't think anything in the statute suggests that there must be some category of accompaniment within the walls of the bank building. If the test is that there must be something that's substantial, how would you instruct the jury? We would instruct the jury first to say it must be more than de minimis or trivial movement. You could go further than that and ask the jury to consider factors such as the amount of distance that was covered, whether the person was moved into or out of a bank or another building, and whether they were ultimately transported to a different place or location than where they were found. But your first, when you just said it's not de minimis, is that your primary argument? You just want a non-de minimis rule? We believe that resolves this case, yes. We think that, as we use substantial in the briefs, it is the flip side of de minimis. So we think that de minimis is what happened here. Movement with inside a person's own home only for a few feet is de minimis. We think the way to effect that is de minimis. The woman died from a heart attack, didn't she? That wasn't de minimis. No. And part of what frightened her may have been the fact that your client forced her to go from one room to another. Justice Scalia, there's no doubt this is a tragic and sad case, but Section 2113e provides a mechanism for the government to hold Mr. Whitfield directly responsible for the fact that she passed away. But why wouldn't it be substantial when you go from one room to another? Why doesn't that satisfy the definition of substantial? The reason for that, I think, is if you look at the structure. We're looking for guidelines here. So if you go from one room to another, that's arguably substantial. I think the problem with that interpretation, Justice Kennedy, is that it sweeps in so many A offenses, because the movement of just a few feet inside the bank, as Justice Mr. Chief Justice referred to, happens frequently. Congress, in setting up Section E, as an aggravated offense that requires a 10-year mandatory minimum and that at the time it was passed, requires ---- I don't think that a few feet from a cash register to a vault. I've actually never seen the vault. It's usually locked away behind the main area. So that's going to be another room, and it's going to be not necessarily a short distance. Well, the typical bank robbery happens in branch offices, which are probably half the size of this courtroom. So I don't believe it's going to be ---- See, I think the statistics that we were shown is that the vast majority of bank robberies are at the counter, that people are not moved at all. Well, we don't know the latter aspect of that, in that no one, including the government under the current iteration of the U.S. Attorney's Manual before this case, has been looking at the question of whether a person was moved a single step, again, from this side of the lectern to that, from this side of the counter to that, in the course of the bank robbery. But we know if this Court wants to ---- This case didn't involve a single step. But you say, whatever it was, 9 feet, it's de minimis. If you're right about that, then this charge never should have gone to the jury. Because is the jury supposed to say what's de minimis, or is the judge supposed to say that? Well, the judge will always address that in the first instance under a Rule 29 motion. But, Justice Ginsburg, you're absolutely correct. Our view is that this should not have went to the jury on the forced accompaniment count. But I would return to Justice Scalia's question. So you say there's no proper instruction to a jury that would allow this case to go to the jury? That is correct. We do not ---- That isn't de minimis. That's, I mean, don't you accompany a person as well when you stay with them in the room? And did he? Well, the government even agrees with us here that this isn't a confinement statute. And that goes back to the dictionary. So a person, does it make no difference that they take the teller or they take the woman, you walk 10 feet down to a room, he says sit there, and he stays with her to make certain that she won't pop her head up so someone can see? I think that's probably what happened here. All right. If that's what happened here, the accompaniment was not just walking. It was also staying and walking back, perhaps. The problem, Justice Breyer, is that that converts this into a confinement provision. And Congress pointedly did not write a confinement provision. We know, first, that accompany, by its dictionary definition, that the government agrees with means to go with, not to stay with. It's a very peculiar statute. You kidnap a victim as a hostage. You walk them 2 feet into the car. You quickly disguise the car and have them lie on the floor. And that isn't covered by the statute. Or you have outside, I don't know, there's a closet. You go walk to them and you push them in the closet. That's not covered. It is covered if you go 30 feet down the corridor with somebody else. I can't – I don't understand, then, how this statute is covered. I will agree with you that Congress could have written a much more precise statute here. But we think that it – given the penalty structure and the increased 10-year mandatory minimum that would apply here in so many bank robbery cases. Well, I'm not so sure what – if you were going to draft a statute to reach a sum of this conduct, where people are forced to accompany the robber, how would you have done it? I think if Congress wanted to adopt the government's interpretation of this statute, it should have said, forces someone to accompany him for any distance whatsoever. Because that modifies the word accompany, which in our view, in its ordinary usage, implies something more than the word accompany. And in the ordinary use, it doesn't. Justice Scalia gave one example, I suppose I would have to say. The nurse accompanying the patient as she walked around the intensive care unit. And that's an ordinary use of the – of accompany. Well, again, we don't disagree that it's a permissible usage. We, for the reasons set out in the brief, don't think that it is an ordinary usage. And we certainly don't think it is ordinary in the way that Congress used it. Again, if you look at the usages of the word accompany in the code in 1934, Congress never used it to cover this type of short-distance movement. It is also consistent with this Court's usages in the 1930s, which they – virtually all of them in the 1930s referred to long-distance movements. And we think that's consistent with the structure of this statute. Scalia, because that was evident from the rest of the statute, right? I mean, all the statutes you cite, they make it clear that you're talking about accompanying over a long distance, kidnapping or whatever else. But here, there's no such indication. And presumably, where you have an indication in some statutes, you do not have it here, it presumably does not apply here. Well, Justice Scalia, I disagree with you that we don't have the other indications in this statute. And I would start with the Nascotor principle under Section E. Congress put forced accompaniment in Section E because it viewed it as akin, in terms of the defendant's culpability, to murder. It made it more serious than Section D. We know from Section D that Congress viewed endangering a person's life with a gun or knife as only a minor aggravating factor that didn't warrant any mandatory minimum at all. It didn't. It didn't make it comparable to murder because the provision itself says that the accompaniment shall be a person accompanying shall be in prison not less than 10 years or if death results shall be punished by death or life in prison. So it's you're talking 10 years. Well, the death results language was added in 1994 as a conforming amendment to bring the statute in line with this Court's jurisprudence. If you look at our brief at pages 25 and 26, we have the original text of the statute. Under the original version passed in 1994 or 1934, forced accompaniment and killing carried the exact same statutory penalty. Both required a mandatory minimum of 10 years. Both required or made the defendant eligible for death penalty. The statute was your client prosecuted under, the old one or the current one? Well, certainly under the current one. But the context is still the same in the relationship with the killing offense. And I would go back to your earlier question, Justice Scalia. This statute, through the killing offense, gives the government the tools it needs to hold Mr. Whitfield directly responsible for the fact that Mrs. Parnell died. Mrs. Whitfield was indicted for a killing offense. Over our objection, the district court interpreted that provision as a felony murder provision that did not require any intent above and beyond the intent necessary for the bank robbery itself. And based on the evidence, the jury rejected that count and held him not responsible for her death. It makes little sense to stretch the meaning of a forced accompaniment so broadly that it allows the government to hold him indirectly responsible for her death when the jury, who we rely on to make these kinds of determinations in our system. I'm sorry. I would like to stop you for a minute because I thought that the killing was one thing, but it wasn't. Didn't the judge say you didn't ask for what was it? Death results. Death results, right. Justice Ginsburg, you're correct that the Fourth Circuit threw out the death results finding because it had not been charged in the initial indictment. But you're also correct that killing is a separate offense. As interpreted by the Fourth Circuit, at least, Fourth Circuit wasn't charged. But this jury, in the issue of causing the death, that wasn't charged. And the defendant was not acquitted of that. But that's a separate offense. As interpreted by the Fourth Circuit, there are three offenses under Section E, killing, forced accompaniment, and the third is forced accompaniment resulting in death. The third is the one that wasn't charged and was thrown out. Even under it, we still have the antecedent question of whether there's a forced accompaniment in the first place. But he was properly indicted on the killing offense. It was interpreted by the district court as a felony murder provision. And based on the evidence, the jury held that Mr. Whitfield was not responsible for killing Mrs. Parnell. Alito, if the test is more than de minimis, what does the judge tell the jury if the jury says, we don't understand what de minimis means? I think de minimis is often, in other jury instructions, defined as trivial or insignificant. And we would ---- But what does that mean? What does that mean in relationship to the distance that must be involved? Well, in our view, this is the easy case in that it's only a few feet and it's entirely within a person's own home. We think the way to effectuate that is through a substantiality finding, which juries make all the time in other under other criminal statutes. Breyer. You want to know what? I mean, that's exactly the same question. Substantial. You tell the jury substantial, they have no idea in this context. I mean, I wouldn't. I would have thought, yes, moving a person, I don't see what it has to do with whether it's her home or somebody else's home. And I don't see what that has to do with it. And a few feet sounds, no, does sound substantial to me. I know nothing about it, you see. So is there anything else you want to say in response to what Justice Alito said? Because that ---- think of my problem. It's not your client. That is a problem, but it's not the main problem. The main problem is to write a standard so people can understand it. And what do you want the words of that standard to say? Justice Breyer, I would go back to the jury instruction that I set out earlier. We believe the jury could be charged that in determining whether the movement is substantial or whether the movement is more than de minimis, it can consider the amount of distance that was traveled, whether the person was taken into or out of a home or another building, and whether they were ultimately transported to a different place or different location. The problem is that we don't ---- the jury would not know and a court would not know what you are looking at, what ultimately you're concerned about. You have a number of factors. But the ---- I assume the point of this statute is to impose a severe penalty in cases in which Congress thought there would be great emotional distress for the person who is forced to accompany that person. Now, that could depend on lots of things, not just the distance traveled. So to applying a purely spatial test to that just doesn't make any sense. You can't say is it substantial in relation to the thing that this statute is getting at. That's what I have a problem with. Well, I think in part you're overreading what Congress was trying to do here by suggesting that if the person was put in particular fear or danger or trauma, that that would justify any charge. That's not what he was looking at, because we know in context that we can't do that. What's the reason for this? Why a heavier penalty for a case where there's accompaniment if it's not that there's greater across the whole category, greater likelihood of trauma to the person who's involved? We know that Congress viewed the forced accompaniment provision as similar to kidnapping, which under the Federal law at the time required transportation entirely out of State and under common law required transportation out of the country. Under even the common definition of kidnapping at page 30 of our brief, required more than a confinement or a false imprisonment. Scalia, how do I know Congress considered it equivalent to kidnapping? How do I know that? Well, for those of you who do consider the legislative history, there are many. So I don't know it at all. You may not know this, but I think, Justice Scalia, you do know it from the context and particularly from the association that Congress made in Section E between forced accompaniment and killing. It made both of those crimes eligible for the death penalty of the discretion of the jury. And if you look at the broader code at that time, there were only a handful of offenses that carried the potential for the death penalty. Among them were murder and kidnapping. So I think that is one very good reason why we know that Congress would have been thinking of accompaniment as something akin to kidnapping, which it had in other provisions of the Code. Breyer, you had to cross State lines. Kidnapping statute had to cross State lines. And you don't even argue you have to cross State lines. No, absolutely not, Justice Breyer. We're not suggesting that Congress intended to incorporate the elements of Federal kidnapping here. But what we are saying, to go back to the question about what we're trying to distinguish here, we believe that forced accompaniment and the instruction that we've suggested for the jury allows the jury to distinguish cases of confinement on the one hand, where the movement is incidental to a confinement. You're keeping a person in their home, you're keeping a person in the bank. It distinguishes those from cases that we would in a non-technical sense think of as a kidnapping or an abduction, where you're taking someone from the bank with you on the getaway, which is the John Dillinger scenario we discussed in the briefs, or the opposite scenario that I talked about from the Wilson case a few minutes ago, where you take the bank employee from their home to the bank. That kind of situation is, we believe, the heart of what Congress was trying to get. Kagan. You might be right that it's the heart of what Congress was trying to get at, but this happens all the time when Congress writes statutes, right? It thinks about a particular case, it has an idea in its mind of the sort of conduct they mean, which is this John Dillinger example, but then when it gets down to drafting the words, it writes words that are broader than that, that include things that are not in the front of their minds, like this one. Well, I think when you put the words they use in the context in which they use them, it limits it to that kind of scenario. And even the government has never thought that these kinds of a few steps of movement inside of a bank qualify as a forced accompaniment. I would point to the cases cited in our reply brief at pages 12 and 13, all of which were charged under A or D, and all of which clearly involved movement that would easily satisfy the government's single-step rule here. Yet in each of those cases, based on the guidelines, based on the 3553A factors, the district courts imposed sentences well below the 10-year mandatory minimum that would apply under a section E charge. We know that if the Court here blesses the single-step rule that the government is now advocating, and which has never been present in the United States Attorney's Manual before, that the default principle under the Justice Department's charging guidelines will be to include a section E count in every bank robbery where the prosecutor can allege and prove a single step of movement that occurred in the course of the robbery. That surely cannot be what Congress intended in the structure of this statute, where it designated section E as an offense that was so much more serious and so much more extreme than a bank robbery. Ginsburg. But here it wasn't a single step. And it seems from what happened that this case presents the very danger that E wants to guard against, that is, the woman was terrified and she had a heart attack. Well, Justice Ginsburg, I disagree that N.A. and the government actually agrees with us with this at page 40 of their brief, with the notion that dangerousness by itself can convert something into an accompaniment that's not. We believe, first, that in section A, Congress required as an element of a basic offense force, intimidation, or violence. What that tells us is that in every bank robbery, there's going to be danger presented to everyone present. And under section D, Congress used danger as the jumping-off point for an aggravated offense under section D. It escalated the statutory maximum in cases where the robber used a gun or a knife to put someone's life in danger. So I think that dangerousness by itself doesn't get us to an E offense. And I would also say one more thing before I reserve my time, which is that reversing this conviction and rejecting the government's single-step rule is in no way going to allow Mr. Whitfield to walk away from this unpunished. Even under our view, his sentence would be 12 to 13 years, which is approximately four times the amount that a bank robber receives for — that a first-time offender like Mr. Whitfield receives for a bank robbery offense. That factors in his post-robbery conduct during his flight and gives him adequate punishment for that, so that the E charge is unnecessary to ensure that he receives the punishment he needs. Thank you, Mr. Carpenter. Mr. Fletcher. Thank you, Mr. Chief Justice, and may it please the Court. Section 2113e prescribes greater punishment for a bank robber who forces another person to accompany him in committing the robbery or in attempting to avoid arrest. When Petitioner invaded the Parnell home and forced Mrs. Parnell to go with him to a different room where they could not be seen by the police, he violated that statute because the forced movement fell squarely within the ordinary meaning of the word accompany. In everyday speech, it is both proper and common to say that one person accompanied someone else from one room in a house to another. And Congress chose to use that broad, nontechnical term in framing Section 2113e. It didn't include any qualifying language requiring that the forced accompaniment traverse a particular number of feet, cross the threshold of a building, or otherwise cover a substantial space. But all the definitions begin by saying accompanying is go with somebody as an associate or companion. Yes, it is certainly a permissible use and a common use in context to say I accompanied someone, you know, across the hall. But when you're in the context that this present one is, of bank robbery, the point of associate or companion, I think, takes on greater weight, obviously an unwilling one. I think you're right, Mr. Chief Justice. I think the connotation of accompany focuses very much not only on movement, but also on movement together. But as you say, it doesn't have to be a friendly association or a voluntary association. I think this Court's opinion in Oregon v. Elstad, which involved essentially the reverse of the movement in this case, the police encountered a suspect in the bedroom in his house and directed him to get dressed and accompany them, this Court wrote, to the living room to answer questions. I assume they hadn't met before. I assume that the association wasn't a sort of longstanding one or a voluntary one, but it's still natural in those circumstances to describe two people moving from one room to another with the term accompany. Roberts, you take two bank robberies. One, the robber comes in, waves a gun, pistol whips five people, grabs the money and leaves, okay? In another, bank robber comes in, just gets the bag of money, says you walk over here two feet with me so we can get the bag of money, and leaves. First one, you could get probation. I mean, not going to, but there's no minimum sentence. And the second one, you get at least 10 years. That doesn't make any sense. Well, I think it does make sense, because I think Congress understood and I think in practice we would see that the first bank robber in your first hypothetical is not going to get probation. He's going to get a very, very substantial sentence. And we know that Congress contemplated. But they didn't care exactly what the minimum was, right? Even before the sentencing guidelines, which would obviously have a higher sentence, they didn't care if it was one year because of extenuating circumstances, whatever. But they said forcing someone to accompany you is so much more serious that you get at least 10 years. And I think that they had good reason to do that. But I also just want to highlight that the 10-year mandatory minimum that they set for the forced accompaniment offense is right in the middle of the range for a completely unaggravated, unarmed bank robbery in violation of Section 21. Range where? The statutory range of zero probation to 20 years. The statutory maximum is 20 years. And Congress set them for a nonaggravated bank robbery. For an armed bank robbery under 2113d, the statutory maximum is 25 years. And so when Congress established a mandatory minimum penalty for Section 2113e at 10 years, absolutely it did that because it regarded 2113e violations as culpable conduct that merited enhanced punishment and deterrence. But it also made clear that it understood that there were going to be unaggravated bank robberies and armed bank robberies that warranted greater punishment than forced accompaniments. And it left room for sentencing judges and, you know, now under the guidelines, for sentences to be framed in a way that took account of the type of aggravating circumstances like pistol-whipping the victim and threats and things of the nature that you described that don't trigger a statutory enhancement, but that obviously sentencing judges would consider. The problem is there's a set of cases where you can think it's serious and a set of cases where you just think it isn't. The bank robbery, they're more in the bank are the ones that concern me that it isn't. The bank robbers are in the bank. There are a couple of other customers who walk in and one of them says, will you please walk over here with me for a second. Okay? They walk two feet to get him out of the way. That doesn't sound as if that's a lot worse than pistol-whipping somebody. And you can multiply those cases. And what is worrying me about it is, since it's a mandatory minimum, the prosecutors have choice about whether to indict or not on that ground. And a person who has coming in and who is represented and what's his choice? You know, you either plead guilty or I put this in, too, because you moved one of the customers 10 feet. Now, that's the nature of the mandatory minimum, which is disturbing and calls, I think, for some kind of lenity when there's openness of interpretation. But on the other hand, it's very hard for me to distinguish how to separate the cases that seem comparatively trivial taking place within the bank from the ones where you really are injecting fear, special fear, into the mind of the person who's told to accompany you. And that could take place even if it's like one foot, because he's been singled out. Okay. Is there any way to do it? Is there any way that you could reassure me that in these lesser cases this will not be used as an instrument towards a guilty plea or an instrument where these minor things that he's been talking about nonstop, your brother over here, that they'll certainly turn out to be charged routinely? Yes, absolutely. I think I'd like to say a number of things. And I think the first one goes to the charging question that you asked and that my friend referred to. He pointed to the cases, the four cases that he cites, pages 12 and 13 of his reply brief, as examples that would fall under our definition of forced accompaniment, but that weren't charged as such in this case. But I think or in those particular cases, I think what's important to highlight about that is that three of the four cases arose in circuits that have already adopted our rule. One was in the Seventh Circuit, and one was in the Eleventh Circuit, and one was in the Ninth Circuit. And the Seventh and Eleventh Circuits have specifically said that movement within a bank, our rule here, you don't have to move anyone a particular distance, you don't have to move them out of the building. And so the fact that they weren't charged in that case reflects an exercise of the government's charging discretion, not the fact that the rule that we're asking you to adopt today had been imposed by those circuits. But that's what you're going to leave it to, Mr. Fletcher. It's just going to be prosecutorial good judgment that's going to separate the case that's like, could you come with me a couple of feet. Well, I think that's part of it. And I do think it's important to highlight that the charging guidance that my friend points to does permit the exercise of prosecutorial discretion to determine individual cases. Kagan. I guess I'm asking you, is there anything else? I mean, would you – you think that there should not be a de minimis exception at all? Well, I guess I don't understand my friend to be really asking for a de minimis exception. I'm asking about a de minimis exception. Well, the reason why I don't think de minimis, although we talk about very short movements, and my friend likes to, and we can talk about, I don't think that de minimis movements should be excluded. I don't think it's reasonable. Even the one step? Yes, Your Honor, even the one step. And the reason why I don't think it's reasonable to exclude those is that this statute only applies to forced movements. And it's that element of force that I think my friend likes to ignore and to focus just on the step or two steps. But every time a robber violates the statute, he does it because he's forced someone. Yeah. I thought that was the case, which is why I didn't understand Justice Breyer's question, where he said the amiable bank robber says, would you please step – what are you saying? Would you please step over there? Yeah, I'm walking to the bank robber. Step over there, I'll blow your head off, is what he says. Yes, and I imagine a request to the bank robber. My example was meant to encompass a polite but armed bank robber. But the point is the idea of someone whose bank is being robbed not being forcibly compelled to accompany someone is fanciful. And all you have to do, again, I guess it's a repeating question, is you've got two feet and the prosecutor is armed with another 10 years. It's automatically in his pocket. And then you use that to extort a plea bargain of, you know, 6 years, somebody who might otherwise have wanted to go to trial. Well, we know that Congress drafted the statute as a mandatory minimum provision. We know that it used broad language that encompasses even very, very short movements. And I think the discussion that we have today highlights that, number one, it's very, very hard to separate out the cases that drive at the heartland of what Congress was concerned about, the human shield and the hostages situations, with any sort of a rule based on distance. So your U.S. Attorney's manual does just that. It says you prosecute these when anyone forcibly abducts another during the commission of any offense. That seems to me to be trying to take out those walk two feet. That's not a forcible abduction. I'm not sure that's correct, Mr. Chief Justice. The U.S. Attorney's manual does refer to the section 2113e offense in a one-sentence description as covering forcible abduction. But I don't think it's perfectly sensible, and courts have used the word abduction to describe moving someone from one place in a bank to another one. So you think when the manual says forcibly abducts, it means the two-foot situation? Potentially, yes. The guidelines, the sentencing guidelines use the word abduction, for instance, Mr. Chief Justice. Why don't we say that? Say that what this statute covers is forcible abduction. And there we are. That's not perfect, but it's at least my polite but armed bank robber who asks the person to move over hasn't abducted him. And in many of these de minimis cases, there won't be an abduction. Why not just pick up those words and say indeed the government uses that when it explains it? Well, Congress used very, very different language. Congress didn't incorporate the common law of kidnapping. It didn't refer to an abduction. It used the word accompanying, which has an everyday meaning that encompasses short movements. But also, I think I understand the impetus that some of your questions suggest that abduction carries up or connotes long movements. But that's not the way that it's used in the U.S. Attorney's Manual, and it's not the way that it's used in the provision of the guidelines, which provides an enhancement for a bank robbery or for any robbery that involves the abduction of a victim. So the manual is read, forcibly abducts, they read as for somebody to move two feet. That's an abduction? Yes. They don't view it as limiting the charges under Section 2113e to require movement of any particular instance. And so the manual which the other provision in the manual which is that you should charge as large an offense as possible means that in the case where somebody is forced to move two feet, you charge that as a forcible abduction. No, that's not correct, and in part that's because the manual doesn't say you always charge the most serious offense. It says you charge the most serious offense that's consistent with the nature of the conducted issue and that that permits and in fact requires an individualized assessment. So is two feet consistent with the conducted issue? Well, I think there's a reason, and I do think there's a reason why Congress covered even very short movements, and that's in part because every time a robber forces someone to go with him, he exposes that person to a great degree of trauma, to physical danger. And I think also Congress reasonably decided not to try to write in a limitation to use a term that includes movements as short as a few feet because it's so difficult to draw a line, it's difficult to draw an admissible line at all, and any of the lines that have been offered to you by my friend, by the amicus briefs, by the lower courts that have tried to cabin this statute by departing from its text, all of them would exclude cases that would give rise to exactly the sorts of dangers that Congress was concerned about, which are robbers using victims as human shields or robbers holding the gun to the head of the victim and dragging them around the bank during the offense. I think all of those are at the heartland of what Congress was concerned about. When Congress first drafted this accompanying language, this was a capital offense, yes? Potentially, yes. So, I mean, would you say the same thing if it were still a capital offense? We would. We think the offense had the same meaning then and now. And I think part of the reason why we say that is, first and foremost, that the statutory language we think accompanying has a plain meaning that includes those sorts of movements. But also, I think it's true. My friend likes to point out that it was potentially death eligible. But the sentencing range in the 1934 statute was minimum of 10 years to a death sentence if the verdict of the jury shall so recommend. The murder statute in 1934, in contrast, said that if you murder someone, it's a mandatory death penalty or life imprisonment. I think that was unconstitutional, right? The imposing the death penalty for this. That's correct. The court could have held it. Even kidnapping, you know, taking the person away when you're fleeing. It was unconstitutional to apply the death penalty. So we really don't have to take that into account, I suppose. That's correct. In the current statute. I guess I was just suggesting that maybe we should take it into account in thinking about what Congress could have meant for this statute to mean. But it seems, it seems very unlikely that Congress meant to give the death penalty to somebody who forced another person to move two feet. And I think Congress probably understood that a jury would be very unlikely, in fact, almost certain not to recommend the death penalty in a case like that. Oh, no, no. But we're talking about proper instructions to a jury, not jury nullification. Don't play that card. But, Justice Kennedy, I'm not suggesting that they'd nullify on the guilt offense. But the penalty provision in the 1934 statute said it's punishable by death if the verdict of the jury shall so recommend, which permitted a jury to decide the severity of the offense. What's wrong with the de minimis? Meaning, why don't we leave it to the jury to decide when a movement is inconsequential or trivial? We're worried about telling them what that is. But we use the word de minimis in law all the time. And all we tell juries is, you don't have to find this if the movement was really trivial and inconsequential. And they can then use their judgment, instead of the prosecutor, about when something is causing the kind of fear that Congress worried about. Well, I think that's a long ways from the statutory text, first and foremost. I also don't think that it's consistent. Sotomayor, we've basically said, I'll bet, only in the civil area, that we always assume that trivial and inconsequential matters will not be covered by a law. You're right, de minimis. I don't know why that can't be true in the criminal area, either. De minimis is a general principle of law. I, like you, have not found a case where this Court has applied it in the criminal context. I think in part that's because it's ultimately about deciding what Congress intended to provide. If we were going to apply it, I guess what we would apply is, was there significant fear or trauma induced? I mean, that's what the statute's about, threatening people, causing them such excitement that they may have a heart attack, as happened here. I don't know that the distance is what is de minimis. It's how much you put the person in fear, I suppose. I do think that that's right, and I think that points up that crafting any sort of a de minimis or substantiality requirement that tried to get at the concerns that Congress had in passing the statute would be extremely hard to do. And I think the jury that asks, as Justice Alito suggested, what do you mean by de minimis? How are we supposed to determine whether or not a movement is de minimis? It would be very, very difficult to give that jury any reason to fight this. Breyer, but you could say de minimis did because of the language that you point to accompaniment. That's what I criticized earlier as just being too vague. But where movements are small, this is the – where movements are small, in considering de minimis, you can consider that where movements are small, the absence or presence of the kind of fear that is connoted by the word abduction. That's a little tough, but I see your point there. But the alternative is just this sort of vast discretion in bank robbery cases where there has been nothing more like an inch or it really had nothing to do with the abduction concern, and the distances were minuscule. Scalia. It's a very bad statute. Would you admit that? I would disagree with that. I would say, though, that even if you agree with that, that's not a reason to read it other than according to its terms. And I think, Justice Breyer, my friend likes to suggest that if you go our way on this, you really are going to open up this discretion for prosecutors to charge the 2113 E offense in a vast number of cases. Yes, that's true. Respectfully, though, I don't think he's been able to substantiate that with any kind of evidence. As we pointed out to you earlier, 95 or 90 – over 90 percent of all the criminal charges in the country are pleaded guilty. Isn't that the right number, something like that? I don't know. And certainly you do read lots of criticisms of people pleading guilty because they're afraid that in the absence of the guilty plea, the sentence will go way up. I don't know how true that is. I haven't seen the studies, but I'm certainly familiar with literature that says that. I understand the concern, but it arises only to the extent that forced accompaniments of short distances are common in bank robberies. No, no. That is exactly where the prosecutor needs another ace in his hand. In other words, if he's waving a gun, if he's assaulting the people, if he's shooting them, fine, he's got enough leverage. But when he hasn't done any of that, and all he's done is ask the teller or whoever to accompany him for – or forced, I'm sorry, the teller to accompany him for a few feet, that's where the prosecutor says, you know, it's a good thing I've got these 10 years, or otherwise he might go to trial. I don't think that's correct, Mr. Chief Justice. I think in a number – our rule has been the law in a number of circuits, at least four of them, in the Eleventh Circuit since the Bauer decision in 1992, and yet you don't see, and Petitioner certainly hasn't pointed to, a pattern of prosecutorial abuse in those circuits. Instead, what you see is the case, the Section 2113 EFNs being charged in unusual manner. Roberts. How would you see the evidence of prosecutorial abuse? When you have these cases, he says, I'm going to charge you with a 10-year minimum. The guy says, oh, my gosh, I can't risk that. I'm going to plead guilty to 6 years or 7 years. I don't see how that pattern could show up in any kind of statistics. Well, for one thing, I mean, both sides here are looking at the fact patterns in reported cases. There can be a – But that would not be a reported case, because he would have pled guilty. But even guilty pleas can give rise to reported cases that describe the facts of the offense if there's an appeal relating to sentencing, as there often is. And we just don't see the government bringing this charge, in part because most bank robberies do not involve forced movement. The classic bank robbery— When they plead guilty, don't they have to – I don't remember if this is just limited to the State systems or not – don't they have to waive their rights to appeal? In some cases, guilty pleas do include waivers of appeal rights. So I understand the point that many guilty pleas wouldn't show up in reported cases. But I think we also provide statistics about the number of guilty pleas would still be sentenced according to the sentencing guidelines. And we provide statistics that say that – and would show up in the FBI's bank crime statistics. We provide statistics suggesting that most – the overwhelming majority of bank robberies are limited to the teller area. They don't involve moving someone to the vault. The classic bank robbery, we cite sort of secondary literature as well, involves someone walking up to a teller and presenting a demand note or making an oral demand. And I think once a robber goes beyond that and begins forcibly orchestrating the movement of people around the bank, that's stuff that – conduct that's typically accomplished with a weapon or with physical – the direct application of physical force to compel people to move around the bank. And I think Congress correctly made a judgment that that's significantly aggravated conduct that separates those offenses from the mine run bank robberies. Sotomayor, but the problem is that there is some fortuity in this. Some bank robbers will tell people, tellers, move to that corner and lay down on the floor and they'll just point the gun. There's no accompaniment. Some of them may say move and move with them. There is. There's no doubt that there's some fortuity. That's going to happen any time Congress frames a broad rule. But I do think that being forced to move around the bank with the robber is materially worse and materially more dangerous to the victims than being ordered to move to the other side of the bank by the robber. If the robber comes into the bank and pulls a gun, everyone in the gun is going to be – everyone in the bank is going to be frightened. And if he directs everyone to go over to one side of the room, that's going to be frightening, too. But if he picks out a teller and says, you're coming with me and we're going to the vault, that teller is going to be the most afraid in the bank, the most traumatized. That person is going to be in the greatest danger, at the greatest risk of further violence from the robber, and that person is going to be in the worst possible place if the police respond, if an armed guard responds, or if some sort of confrontation breaks out. Roberts. Well, I just don't see that as a common-sense proposition. If you're a teller, when are you more scared? When the guy has a gun pointed at you and says, get the money? Or when the guy does not have a gun, so far as you can see, and says, you better come with me over to the vault? So I think potentially in the case with a gun, but a couple of points on that. One is that the vast majority, as far as I can tell, 2113e forced accompaniment offenses almost always involve weapons. I think the parties cite, you know, six or eight lower court cases that have involved the question at issue here, how far do you have to move in order to be a forced accompaniment. In all of them except this one, the person had either a gun or a knife. And I think that makes sense, because if you're going to be trying to direct the people, the movement of people within the bank, you're going to do that by means of a gun or a knife. The second thing that I'd say is that I do think that the teller who is forced to move with the robber, even if we hypothesize the unusual case of a robber who doesn't have a weapon, that teller is still sort of at risk of further physical force unarmed by the robber himself. That person is still in danger in the event that an armed confrontation breaks out with someone else. That person is still in a very, very bad position. I think Congress reasonably decided that it wanted to deter bank robbers from involving innocent people in their offense. And I think it sensibly made the decision to deter that sort of conduct at the very first step by writing the statute in a way that prohibits forced accompaniment, a term that, as our briefs demonstrate, readily encompasses the type of movement at issue here from one room to another, and I think also readily encompasses even movements as short as a few steps. The example that my friend gave earlier was moving from one side of the lectern to another, and he suggested that movements of that order aren't sensibly described as accompaniments. I think, to the contrary, if Mr. Dreeben had joined me when I came to the lectern to present my argument a few minutes ago, we would very easily say that he accompanied me to the lectern to present the argument. This Court used the word accompanied to describe a movement of just a few steps in Washington v. Chrisman, where the issue was a police officer accompanying a college student from the public corridor of the student's dorm into the student's dorm room. And I think by choosing to use that term, Congress made the judgment that forced movements with a robber present enhanced dangers, present greater trauma to the victims, and that it was appropriate to deter and punish that conduct with a broad rule, because in every instance where it arises, it presents some dangers, but also because to try to draft any line that excludes some of the types of hypotheticals that the Court has proposed today would be very difficult to do, would produce an arbitrary and hard-to-administer standard, and would inevitably rule out some of the cases that Congress meant to include when it drafted the statute. If the Court had to do that, it would be very difficult to do, and it would be a very  Kennedy, you said earlier that the statute is not using the threat of this extra charge in order to obtain guilty pleas, very substantial evidence. Would that be a basis for us to rule that the statute is either inoperable altogether or that it should be interpreted in a way consistent with what the Petitioner argues? I don't think so. I don't think this Court has ever suggested that charging decisions with respect to a particular statute should inform the way the statute is interpreted. I understand. Kennedy, that concern is simply irrelevant to the interpretive task that we face. I think the Court has said that the interpretive task in interpreting a statute is to give the words of the statute their ordinary meaning in the context in which they are enacted. I don't think that is considered a charge. Questions of charging discretion would play into that inquiry. I understand why such a hypothetical pattern of prosecutorial abuse would give the Court pause and would be of concern, and I think that's why it's significant that to the extent that those concerns do arise, we don't have evidence of that here in the circuits that have adopted our rule or something very much like it. And I don't think there's any indication that prosecutors are departing from the instruction to consider the circumstances of individual cases in bringing charges. If the Court has no further questions, we'd ask that the judgment be affirmed. Roberts. Thank you, counsel. Mr. Carpenter, you have four minutes remaining. Thank you. I would offer the Court first a twist on the old adage from Justice Holmes, which is to say that sad facts sometimes make very bad law. The facts of this case are undoubtedly sad, but the broad rule that the government seeks to apply here would cover cases where the facts aren't as sad and aren't tragic at all. I would go to your point, Justice Scalia, about whether we should somehow interpret the statute to cover cases where there's particularly heightened trauma. On that issue, there was trauma here, but it had nothing to do with the movement from one room to another, and it had everything to do with the fact that he invaded her home. So it can't – this case can't turn – the application of this provision can't turn on the happenstance of whether she was sitting in her room when he walked in or whether she happened to be standing at the hallway and he asked her to move into the room. Also, the government repeatedly points out all the bad conduct that can happen even where there is movement of only a few feet and it's inside the bank, but it can be accompanied with physical assault, et cetera. I would point the Court to the government's own brief at page 23, where my friend cites a series of cases that he describes as the most egregious examples of forced movements over a short distance. In each of those – in three of those cases, they were decided under the guidelines, Davis, Lewis, and Reed. In each one, based on the guidelines and based on the 3553a factors, the district courts imposed a sentence well below the statutory maximum that was available for an A offense. What that tells us is that the enhanced statutory maximums under E aren't necessary even in these egregious cases where the movement is accompanied by physical assault and where it's over a short distance in the bank. On the flip side, though, the government's broad single-step rule is going to be tremendously harmful in the minor on-the-bank robberies where you have only a few feet of movement and which present the problems that many of you have touched upon about the exercise of prosecutorial discretion. It's important to point out that in his presentation today, my friend mentioned that, well, the guidelines – the Guidelines Charging Manual doesn't actually provide a limit here because abduction means even movement of a single step. So we know that the government isn't disavowing the single-step rule. It continues to advance it before this Court. And the government has also pointed to problems with line drawing. There's no doubt that it is not easy to draw a line in a case like this, but that doesn't justify the Court or the government in throwing up its hands and saying there's no line at all. I would say that the rule of lenity should have special force in the context of mandatory minimum provisions like this one, both because of the notice that a criminal defendant should receive if his conduct is so severe that he's going to face a mandatory minimum penalty as severe as this one, and because of the harm to the system that flows from a broadly applicable mandatory minimum that gives the prosecution the ability to threaten these charges in otherwise ordinary bank robbery cases. If there are no further questions, I would ask the Court to reverse the e-conviction and send this case back for resentencing. Thank you, counsel. The case is submitted.